AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

JUN - 6 2016

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 3:16-mj-134 |
| Joseph Maybrier, Jessie Berry, and Jessica Ann Tyree | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __11/2015 through 12/16/2015__ in the county of __Westmoreland and others__ in the __Eastern__ District of __Virginia__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1029(b)(2) | Conspiracy to Commit Access Device Fraud |
| 18 U.S.C. § 1028A | Aggravated Identity Theft |
| 18 U.S.C. § 1349 | Conspiracy to Commit Bank Fraud |

This criminal complaint is based on these facts:

See Attached Affidavit, incorporated herein by reference

☑ Continued on the attached sheet.

Reviewed by AUSA/SAUSA:

Heather L. Hart

*Complainant's signature*

Derek Mullins

*Printed name and title*
Postal Inspector, U.S. Postal Inspection Service

Sworn to before me and signed in my presence.

/s/
Roderick C. Young
United States Magistrate Judge

Date: June 6, 2016

City and state: Richmond, Virginia

Roderick C. Young, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Derek Mullins, being duly sworn, hereby depose and state:

1.  I am a Postal Inspector with the United States Postal Inspection Service ("USPIS"). I have been employed as a Postal Inspector since April 2015. Prior to becoming a Postal Inspector I was employed by the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") since August 2008. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigators Training Program and the U.S. Immigration and Customs Enforcement Academy's ICE Special Agent Training Program. Prior to my employment with HSI, I was a Deputy Sheriff with the Wise County Sheriff's Department in Wise County, Virginia from 2005 to 2008. I have received training in various aspects of federal law enforcement including the investigation of theft, fraud and narcotics related offenses as well as numerous other federal and state offenses. I have participated in multiple investigations, seizures and search warrants which have resulted in criminal arrests, seizures and prosecutions. I have also been the affiant on search, arrest and seizure warrants that have resulted in successful arrests, seizures and prosecutions.

2.  My duties as an Inspector for the United States Postal Inspection Service include, but are not limited to, investigating violations of the Federal Criminal Code to include identity theft, mail theft and fraud, as well as many other federal offenses. I have received extensive training on how to investigate and enforce these violations.

3.  The facts and information contained in this affidavit are based upon my personal knowledge as well as the observations of other agents involved in this investigation. All observations not personally made by me were related to me by the individuals who made them or

1

were conveyed to me by my review of records, documents, and other physical evidence obtained during the course of this investigation.

4. This affidavit contains information necessary to support probable cause for this application. This affidavit is not intended to include each and every fact and matter observed by me or known to the Government.

5. This affidavit is made in support of a criminal complaint charging that in or about November 2015, through on or about December 16, 2015, in the Eastern District of Virginia, Joseph James Miguel MAYBRIER, Jessie Dennon BERRY, and Jessica Ann TYREE did conspire to commit violations of Title 18, United States Code, Section 1029(a) (Fraud in connection with Access Devices), in violation of Title 18, United States Code, Section 1029(b)(2), and did violate Title 18, United States Code, Section 1349 (Conspiracy to Commit Bank Fraud), and Title 18, United States Code, Section 1028A (Aggravated Identity Theft).

## SUMMARY OF OFFENSES

6. Title 18, United States Code, Section 1029(b)(2) provides that "Whoever is a party to a conspiracy of two or more persons to commit an offense under subsection (a) of this section, if any of the parties engages in any conduct in furtherance of such offense, shall be fined an amount not greater than the amount provided as the maximum fine for such offense under subsection (c) of this section or imprisoned not longer than one-half the period provided as the maximum imprisonment for such offense under subsection (c) of this section, or both. Title 18, United States Code, Section 1029(a)(2) makes it illegal to "knowingly and with the intent to defraud traffic[] in or use[] one or more unauthorized access devices during any one-year period, and by such conduct obtain[] anything of value aggregating $1,000 or more during that period." An "access device" is defined to include any card or account number that can be used alone or in

conjunction with another access device, to obtain money, goods, services or any other thing of value. 18 U.S.C. § 1029(e)(1). An "unauthorized access device" is defined as any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud. 18 U.S.C. § 1029(e)(3).

7. Title 18, United States Code, Section 1028A provides that "Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." Title 18, United States Code, Section 1029 is enumerated as a predicate felony violation under 18 U.S.C. § 1028A(c).

8. Title 18, United States Code, Section 1349 provides that "any person who…conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy. Title 18, United States Code 1344 makes it illegal to "knowingly execute[], or attempt[] to execute, a scheme or artifice to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises."

## PROBABLE CAUSE

9. From approximately November 16, 2015, through November 27, 2015, I, along with other Inspectors with the USPIS, began investigating two post office burglaries in the King George County, Virginia area that occurred at the Ninde and Jersey, Virginia Post Offices. In addition to the burglaries, USPIS was investigating thefts from the Colonial Beach Post Office and Center Cross Post Office, which are both in the same general area as the Ninde and Jersey

3

Post Offices. Each of these burglaries and thefts had similar characteristics, and it was believed that they were committed by the same suspect(s).

10. On approximately December 7, 2015, I received information from the King George County, Virginia Sheriff's Office indicating they had received two complaints of compromised bank accounts. S.T. and R.G. advised the Sheriff's Office that fraudulent charges had appeared on their bank accounts. Funds in S.T.'s and R.G.'s bank accounts were used to pay a single Kohl's Department Store account listed in the name J.D. (Kohl's account number ending in 3640). Approximately $1,244.33 was used without authorization from S.T.'s bank account at Union Bank and Trust to pay J.D.'s Kohl's account on or about November 17, 2015. Approximately $2,900 was used without authorization from R.G.'s bank account at Union Bank and Trust to pay J.D.'s Kohl's account on or about November 26, 2014. R.G. has a post office box in the Jersey, Virginia Post Office, and S.T. sent a rent check to her landlord, who has a post office box in the Ninde, Virginia Post Office.

11. Union Bank and Trust is a financial institution as defined in 18 U.S.C. § 20.

12. On approximately December 9, 2015, I received confirmation from Kohl's corporate security that S.T. and R.G.'s bank accounts were used to pay on J.D.'s Kohl's store account. Furthermore, Kohl's corporate security provided me with three specific transactions on J.D.'s account that had occurred in the Fredericksburg, Virginia and Herndon, Virginia areas. Kohl's provided photographs of the individuals that made the purchases and a detailed receipt of the items purchased during each transaction.

13. Specifically, the photographs taken during the transaction on November 17, 2015, at the Herndon, Virginia store depict both MAYBRIER and BERRY standing at the counter with several items, to include pots and pans, on the counter. The card used during this transaction was

the Kohl's store credit card belonging to J.D. According to the receipt provided by Kohl's, $592.72 was charged to J.D.'s Kohl's account during this transaction. Additional records from Kohl's show that J.D.'s Kohl's account was used for transactions on November 15, 2015, and November 18, 2015, at a Kohl's store in Fredericksburg, Virginia. On November 15, 2015, $687.54 was charged on J.D.'s Kohl's account. On November 18, 2015, $1,317.70 was charged on J.D.'s Kohl's account. A photograph obtained from Kohl's shows MAYBRIER present at the Fredericksburg Kohl's store.

14. On or about December 3, 2015, the Williamsburg, Kentucky Police Department executed a search warrant at 225 Akins Lane in Corbin, Kentucky while investigating a credit card fraud case. During this search warrant, Williamsburg, Kentucky Police located a Dick's Sporting Goods card bearing J.D.'s name. Williamsburg Police Department later confirmed through a cooperating source that MAYBRIER, BERRY and TYREE had been recently staying at the address in Corbin, Kentucky.

15. On December 22, 2015, I conducted a telephonic interview with J.D. J.D. stated that his vehicle was burglarized on or about October 16, 2015, while parked at a NASCAR race in Kansas City, Missouri. Among the items stolen from J.D.'s vehicle were his Kohl's store credit card and a Dick's Sporting Goods store credit card.

16. During the course of this investigation, I have viewed numerous photographs and identification documents that contain photographs of MAYBRIER, BERRY and TYREE. Furthermore, I have personally interviewed all three subjects and am familiar with each of them. Upon viewing the photographs provided to me by Kohl's corporate security of the fraudulent transactions made on J.D.'s account, I was able to identify MAYBRIER and BERRY in three of the photographs and MAYBRIER and another subject in the fourth photograph.

17. The search warrant executed in Corbin, Kentucky, referenced in paragraph 14 above, was based upon a credit card fraud investigation conducted by the Williamsburg, Kentucky Police Department. Victim, J.W., had recently placed a home loan mortgage application in the mail in London, Kentucky, and J.W. then began to receive calls and letters from Capital One Bank and Wells Fargo regarding accounts and credit cards the victim had not opened. During the search warrant conducted on December 3, 2015, as referenced in paragraph 14, Williamsburg Police located the home loan mortgage application that had been filled out by J.W.

18. Williamsburg, Kentucky Police also received information from Wells Fargo indicating that two bank accounts and credit cards had been issued in J.W.'s name and J.W.'s spouse's name and had been sent to 225 Akins Lane in Corbin, Kentucky. Wells Fargo provided the credit card numbers to Williamsburg, Kentucky police and also provided information that revealed one of the credit cards had been used several times in King George, Virginia. Specifically, the information revealed the credit card, listed in J.W.'s name, had been used at a Walmart located at 16375 Merchants Lane in King George, Virginia on November 19, 2015.

19. The Virginia State Police (VSP) obtained records from Walmart regarding the use of the credit card in J.W.'s name in King George, Virginia. Specifically, the VSP investigator obtained a photograph of the subject using J.W.'s credit card on November 19, 2015, as well as a detailed receipt of the items purchased using J.W.'s credit card. The photograph provided by Walmart depicts MAYBRIER using J.W.'s credit card. The transaction consisted of seven items totaling $76.14. The items purchased included attractant, two laser sights, two packs of pellets, airgun ammunition, and targets.

20. Based upon information provided from a cooperating source in the Williamsburg, Kentucky investigation, the VSP investigator determined that MAYBRIER, BERRY, and TYREE were staying in a rental house at 17 9th Street, Colonial Beach, Virginia. This was also the address used to open the fraudulent Wells Fargo account in J.W.'s name. The VSP investigation culminated in the execution of a state search warrant at 17 9th Street, Colonial Beach, Virginia on December 11, 2015. Numerous items were recovered during the search warrant. Among these items, law enforcement also located air rifle shipping boxes, bb's, pellets and targets.

21. During the execution of the search warrant at 17 9th Street, Colonial Beach, Virginia, I located several pieces of mail addressed to a UPS Store located at 16459 Merchants Lane, King George, Virginia, Box 145. On December 11, 2015, I traveled to the UPS store located at 16459 Merchants Lane, King George, Virginia, and requested to see the box application from the manager. The manager stated that she had been suspicious of that particular box due to the amount of mail going to the box in numerous names. The manager stated that she called the box owner, listed as "H.R.", and advised "H.R." that the manager was returning the mail to sender because the manager could not accept mail to "H.R.'s" box unless it was addressed to "H.R.".

22. The manager provided me with a copy of the box application for box 145. The box was opened in H.R.'s name on November 24, 2015. The name listed on the application was H.R., and the applicant also provided an Arizona Driver's License bearing the name and photograph of H.R. The applicant also provided an insurance card bearing the name H.R. The application also listed two contact telephone numbers; 951-396-6918 and 949-558-4017. Both of these telephone numbers were used as contact numbers for the rental agreement on the 17 9th

Street Colonial Beach rental house, according to records obtained from HomeAway.com. H.R.'s name was used to rent the 17 9th Street Colonial Beach rental house.

23. On or about or about December 14, 2015, I spoke to the legitimate H.R., who resides in Scottsdale, Arizona. H.R. stated that her vehicle had been burglarized on or about August 5, 2015, and that her purse was stolen from the vehicle. Among the items stolen from the vehicle were her Arizona Driver's License and her insurance card. H.R. confirmed that she did not authorize the opening of a UPS box in her name in King, George, Virginia. Furthermore, H.R. stated that over the past several months, she had received telephone calls from police departments across the country indicating that she had rented several vehicles and failed to return them. H.R. signed sworn statements indicating that her identification had been stolen. I contacted the Scottsdale, Arizona, Police Department and confirmed that H.R. had filed police reports for both the vehicle burglary and the vehicle larcenies.

24. On or about December 15, 2015, the manager and another employee of the UPS store in King George, Virginia, viewed photographs of MAYBRIER, BERRY, and TYREE. Both the manager and employee identified TYREE as the person who filled out the UPS box application and provided H.R.'s identification and insurance card. Both UPS employees also identified BERRY as "H.R.'s" boyfriend who often accompanied her to the store.

25. On or about December 16, 2015, MAYBRIER, BERRY, and TYREE were located and arrested in Savannah, Georgia. A search of two rental vehicles, two hotel rooms and their persons revealed numerous items to include stolen mail, hotel credit card authorization forms, documents containing personally identifiable information of victims across the United States, stolen and/or fraudulently obtained credit and debit cards, and numerous other items. A search of Tyree's purse revealed H.R.'s Arizona Driver's License and insurance card.

26. During the search warrant executed on December 11, 2015 at 17 9th Street, Colonial Beach, Virginia, law enforcement encountered a ferret in the residence. The suspects were not home at the time of the warrant, and it was expected that they would not return. In an attempt not to leave the ferret abandoned, I took the ferret to the closest Petco which was located at 16417 Merchants Lane, King George, Virginia. While there, I asked the employees how many ferrets they had sold in the past two months. Petco informed me they had sold two ferrets, both to the same owner, in the past two months.

27. On or about December 21, 2015, I spoke the owner of 15 9th Street, Colonial Beach, Virginia. The owner advised me that he had found a ferret in the back yard of 17 9th Street, Colonial Beach, Virginia, after TYREE, MAYBRIER, and BERRY left. Based on that information, I traveled back to the Petco located at 16417 Merchants Lane, King George, Virginia, and requested information related to the purchase of the two ferrets. Petco provided me with a detailed receipt, a "Companion Animal Purchase Card" and the video of the purchase. The receipt indicated the purchaser bought 18 items, to include two ferrets, for a total of $647.41 on November 16, 2015. The receipt also indicates the purchase was made using a debit card ending in 2942. The "Companion Animal Purchase Card" lists the customer name as K.D. with an address of 22 9th Street Colonial Beach, Virginia, and a telephone number of 951-396-6918. This telephone number was also listed as a contact number on the UPS rental agreement and the home rental agreement for 17 9th Street, Colonial Beach, Virginia.

28. Petco employees were shown photographs of MAYBRIER, BERRY, and TYREE. The employee who conducted the sale of the ferrets immediately identified BERRY as one of the individuals making the purchase. The employee stated that BERRY and two others came in very close to closing time and purchased a large quantity of items. The employees were

also able to pull video of the transaction. The video shows three subjects enter the store and then several minutes later, shows the same three subjects at the check-out counter with numerous items. Based upon my knowledge of this investigation and the number of photographs I have viewed, I was able to identify the three subjects as MAYBRIER, BERRY and TYREE. The video shows BERRY and MAYBRIER carrying several items each, to include the ferrets and shows TYREE filling out the paperwork. Once the transaction is complete, the video shows all three subjects carry the items and leave the store.

29. During the arrest and search warrants conducted on December 16, 2015, in Savannah, Georgia, a Chase Liquid debit card was located in TYREE's purse ending in 2942, the same card used for the purchase at Petco.

30. Information obtained from JP Morgan Chase indicates the account ending in 2942 was opened on November 13, 2015. The signature card indicates the account was opened in the name K.D. The Signature Card provides a date of birth of February 14, 1987, and a social security number ending in 6163. Records indicate that the date of birth matches that of the legitimate K.D., but the social security number belongs to A.H., who lives in Colorado. Furthermore, a review of the debit card statements for the account ending in 2942 indicates a transaction at Petco on November 16, 2015, for $647.41. The debit card statements for the account also indicate that the card was used for a transaction to HomeAway.com, the website used to rent the residence at 17 9th Street, Colonial Beach, Virginia. The transaction to HomeAway.com was in the amount of $2,112.00.

31. On March 4, 2016, Postal Inspector Aaron Hill contacted K.D. via telephone. Inspector Hill identified himself as a postal inspector and explained the reason for the call. K.D. stated that she did not open the Chase Liquid account, nor did she give anyone permission or

authorization to open this account or use the card. She did not know MAYBRIER, TYREE or BERRY nor did she grant them permission to use her personal identifying information.

32. On February 17, 2016, I interviewed A.H. via telephone. I identified myself as a postal inspector and explained the reason for the call. A.H. confirmed her social security number was the same listed on the Chase signature card for the account ending in 2942 and stated that she did not open the account, nor did she give anyone permission to do so.

33. A review of all items seized from each of the three search warrants described above; 225 Akins Lane, Williamsburg, KY; 17 9th Street, Colonial Beach, VA; and Savannah, GA; revealed a number of items, to include documents containing personally identifying information of victims across the United States. In particular, I viewed W2's and tax return information for A.H. A.H. stated that her home had been burglarized between September 30 and October 3, 2015, and a box containing tax information for A.H. was stolen in that burglary.

34. Also located among the evidence returned from the three search warrants was bank account information from Wells Fargo. Wells Fargo was able to provide account statements, account opening information and photos taken at ATM's during transactions. The account opening information for one account lists the account name as K.D. and provides the customer's social security number ending in 6163, actually belonging to A.H. The contact telephone number on the account is (949) 558-4017. This is the same phone number provided by TYREE when opening the UPS Store mailbox (paragraph 21). Furthermore, this is the phone number TYREE used to contact the UPS Store on December 16, 2015, to have her mail and parcels forwarded to her in Georgia. During the burglary of the Jersey Post Office, three USPS money orders totaling $630 were stolen. These same money orders were deposited into this

account on December 11, 2015. Wells Fargo also returned a photograph that depicts BERRY depositing money into this account on December 12, 2015.

35. On or about March 14, 2016, I received information from the United States Postal Inspection Service Forensic Laboratory that several items I had previously sent for analysis had returned. Specifically, I sent several pieces of rifled mail that were located during the Ninde Post Office burglary. These pieces of mail were found on the floor behind the customer service lobby, in the area where mail had been stolen. I also sent a LCD back-up camera and display screen that had been stolen from the Colonial Beach Post Office as described in paragraph 9. The report from the Forensic Laboratory indicated that a total of five fingerprints had been recovered from three pieces of the mail recovered from the Ninde Post Office. All five fingerprints matched the prints of BERRY. The report also indicated that nine fingerprints were recovered from the LCD back-up camera and screen. All nine of these fingerprints matched the prints of MAYBRIER.

36. During a search of BERRY's person, incident to his arrest on December 16, 2015, law enforcement officers discovered a small brown key. It was discovered that this key was stolen from the Jersey Post Office in Jersey, Virginia. This key is a master key that unlocks parcel lockers in a regional area. One area included within this region is the Colonial Beach, Virginia Post Office.

37. In summary, the information set forth above establishes probable cause that in or about November 2015, through on or about December 16, 2015, BERRY, MAYBRIER, and TYREE conspired to use one or more access devices stolen from other individuals, or fraudulently obtained using the names and personal identifying information of other individuals, to conduct transactions in the Eastern District of Virginia to obtain things of value aggregating to

greater than $1,000. The information set forth above also establishes probable cause that, during and in relation to that conduct, BERRY, MAYBRIER, and TYREE knowingly used without lawful authority a means of identification of another person. The information further establishes that, during the relevant time period, BERRY, MAYBRIER, and TYREE conspired to execute a scheme or artifice to obtain any of the moneys, funds, credits, or assets, securities, or other property owned by, or under the custody or control of, a financial institution, by false or fraudulent pretenses, representations, or promises.

38. Based on my training and experience and the information set forth above, I submit to the Court that probable cause exists that in or about November 2015, through on or about December 16, 2015, in the Eastern District of Virginia, Joseph James Miguel MAYBRIER, Jessie Dennon BERRY, and Jessica Ann TYREE did conspire to commit violations of Title 18, United States Code, Section 1029(a) (Fraud in connection with Access Devices), in violation of Title 18, United States Code, Section 1029(b)(2), and did violate Title 18, United States Code, Section 1349 (Conspiracy to Commit Bank Fraud), and Title 18, United States Code, Section 1028A (Aggravated Identity Theft).

Derek M. Mullins
Postal Inspector
United States Postal Inspection Service

Subscribed and sworn to before me
this 6th day of June, 2016.

/s/
Roderick C. Young
United States Magistrate Judge

13